**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JEROME CURTIS STANCIL,

        Petitioner,

v.

                                   Case Nos.: 3:22-cv-1291-TJC-PDB
                                            3:18-cr-55-TJC-PDB

UNITED STATES OF AMERICA,

        Respondent.

_____

### ORDER

**I.    Status**

Petitioner Jerome Curtis Stancil moves under 28 U.S.C. § 2255 to vacate his conviction and sentence. See Motion Under 28 U.S.C. § 2255 (Civ. Doc. 1); Memorandum of Law (Civ. Doc. 3).[1] Following a bench trial in January 2019, at which Petitioner was represented by trial attorney Susan Good Yazgi, Petitioner was adjudicated guilty of possession of a firearm and ammunition by a convicted felon. The Court sentenced him to a 180-month term of imprisonment under the Armed Career Criminal Act (ACCA) to be followed by a 5-year term of supervised release. In the Motion, Petitioner raises five

---

[1] Citations to the record in the criminal case, United States v. Stancil, No. 3:18-cr-55-TJC-PDB, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:22-cv-1291-TJC-PDB, will be denoted "Civ. Doc. __."

grounds challenging his conviction and sentence. The Government responded in opposition to all five of Petitioner's claims (Civ. Doc. 4). And Petitioner replied (Civ. Doc. 10). This case is ripe for review.[2]

## II.   Background

The Eleventh Circuit Court of Appeals summarized the facts and procedural history of the case:

> Sergeant Adam Ardizzoni of the Jacksonville Sheriff's Office was running laser radar one night when he clocked a car traveling at 15 miles per hour over the speed limit. He radioed nearby Officer Rafael Lugo with an alert about the vehicle's speed. Officer Lugo pulled the car over, and while he was running the tag, he saw the driver reach down several times. Under cover of his spotlight, Officer Lugo approached the passenger side of the car—where he saw that the driver was still reaching down. He radioed for backup, which arrived in the form of Sergeant Ardizzoni and another officer, Patrick Ivey.
>
> No longer alone, Officer Lugo approached the driver's side window and made his first contact with the driver, Jerome Stancil. When Stancil lowered the window, Officer Lugo asked for his driver's license, but he also noticed something inside Stancil's car— the smell of marijuana. It was a familiar smell to Officer Lugo, who estimated that he had encountered it more than 20 times before in earlier traffic stops. The smell was also familiar to Sergeant Ardizzoni, who had received narcotics training and similarly testified to smelling marijuana when Stancil's window came down. Officer Lugo asked Stancil to step out of his car and ran Stancil's driver's license. That check revealed that Stancil was a convicted felon on probation.

---

[2] Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the Motion. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief).

While Officer Lugo checked Stancil's license, Officer Ivey searched the car. His apparent suspicion that he would find contraband was correct; he discovered a Taurus .40 caliber pistol loaded with ten rounds of ammunition under the driver's side floor mat. Officer Lugo handcuffed Stancil and walked him over to the backseat of the police car. After hearing the Miranda[3] warning, Stancil decided to talk and admitted that the firearm was his.

A grand jury charged Stancil with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Stancil moved to suppress the firearm and ammunition, arguing that they were the fruit of an unlawful search and seizure. The motion was referred to a magistrate judge, who conducted an evidentiary hearing where Officer Lugo, Sergeant Ardizzoni, and Stancil's son—who had arrived at the scene after the arrest—testified. The magistrate judge recommended denying the motion to suppress, and the district court adopted that recommendation.

Stancil waived his right to a jury trial and agreed to a stipulated bench trial, though he preserved his right to appeal the suppression decision. Among other things, Stancil stipulated that he was a convicted felon, that he knowingly possessed a pistol, that his pistol was manufactured in Brazil, and that his pistol qualified as a "firearm" within the meaning of 18 U.S.C. § 921(a)(3). Those stipulations were decisive for the district court, which found Stancil guilty.

Next came Stancil's sentencing hearing. The government presented three of Stancil's prior convictions, all of which came under Virginia Code § 18.2-248. The conduct underlying those convictions occurred in 1996, 1997, and 2004; the first two convictions were for possession of cocaine with intent to distribute, and the most recent was for manufacture, sale, distribution, or possession with intent to distribute cocaine and heroin. The district court found that all three qualified as serious drug offenses under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), which meant that Stancil was subject to a minimum sentence of 15 years. The court sentenced him to that minimum term of imprisonment.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

United States v. Stancil, 4 F.4th 1193 (11th Cir. 2021) (footnote omitted).

On direct appeal, Petitioner, with help from appellate counsel, argued that the district court erred in: (1) sentencing Petitioner as an armed career criminal because his Virgina convictions were not serious drug offenses; (2) denying Petitioner's motion to suppress; and (3) failing to determine that the prior offenses occurred on different occasions. He also argued that 18 U.S.C. § 922(g)(1) is unconstitutional. Civ. Doc. 4-1. In a published opinion, the Eleventh Circuit found no error in the district court's judgment and affirmed Petitioner's conviction and sentence. Stancil, 4 F.4th at 1195. This § 2255 proceeding followed.

### III.  Law

#### a.  28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 authorizes a district court to grant relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief

4

through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc).

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also Beeman v. United States, 871 F.3d 1215, 1221-23 (11th Cir. 2017). If "'the evidence does not clearly explain what happened . . . the party with the burden loses.'" Beeman, 871 F.3d at 1225 (quoting Romine v. Head, 253 F.3d 1349, 1357 (11th Cir. 2001)). A § 2255 movant will not be entitled to relief, or an evidentiary hearing, "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

### b. Ineffective Assistance of Counsel

"[A] collateral attack is the preferred vehicle for an ineffective-assistance claim." United States v. Padgett, 917 F.3d 1312, 1318 (11th Cir. 2019). To establish ineffective assistance of counsel, a § 2255 petitioner must show both: (1) that his counsel's performance was constitutionally deficient, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether counsel was deficient, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466

5

U.S. at 687). "In the light of the 'strong presumption' that counsel's actions [fell] within the wide range of constitutionally adequate assistance, a movant 'must establish that no competent counsel would have taken the [challenged] action.'" Khan v. United States, 928 F.3d 1264, 1272 (11th Cir. 2019) (quoting Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000) (en banc)). To establish prejudice, the petitioner must show a reasonable likelihood that the result of the proceeding would have been different but for counsel's error. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). The Court considers the totality of the evidence in determining whether a petitioner has established deficient performance and prejudice. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

## IV. Discussion

### a. Ground One

Petitioner argues that his conviction violates Rehaif v. United States, 588 U.S. 225 (2019). See Civ. Doc. 1 at 4; Civ. Doc. 3 at 1-8. The Supreme Court decided Rehaif on June 21, 2019, a month after this Court sentenced Petitioner, but more than two years before the Eleventh Circuit affirmed his conviction and sentence.

In <u>Rehaif</u>, the Supreme Court held that to convict a defendant for unlawful possession of a firearm, the government must prove not only "that the defendant knew he possessed a firearm," but also that he knew he belonged to one of the nine categories of persons that § 922(g)[4] prohibits from possessing a firearm. 588 U.S. at 227, 237. In doing so, the Supreme Court overturned Eleventh Circuit (and several others) law, which held that the government did not have to prove the defendant knew of his prohibited status. <u>See, e.g.</u>, <u>United States v. Jackson</u>, 120 F.3d 1226, 1229 (11th Cir. 1997). The Supreme Court reasoned that since § 924(a)(2) provides that anyone who "knowingly violates" § 922(g) will be fined or imprisoned for up to 10 years, the word "knowingly" applies to the status element, not merely the possession element. <u>Rehaif</u>, 588 U.S. at 227, 228-29. But the Supreme Court also reasoned that a basic principle of criminal law is that a <u>scienter</u> requirement applies to each element that goes to the wrongfulness of an offense (except for minor regulatory offenses). <u>Id.</u> at 230-41. And for § 922(g), the status element goes to the heart of what makes the act of possessing a firearm a crime, because merely possessing a gun is otherwise lawful. <u>Id.</u> at 232.

---

[4] Section 922(g)(1) makes it "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Section 924(a)(2) provides that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2).

7

Here, the January 2018 Indictment charged that Petitioner "having been previously convicted . . . of a crime punishable by imprisonment for a term exceeding one year . . . did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that is, a Taurus, .40 caliber pistol, and ammunition, that is 10 rounds of Smith & Wesson, .40 caliber." See Crim. Doc. 1 at 1. The charge cited 18 U.S.C. § 922(g)(1) and § 924(e) (the ACCA provision). Id. at 1, 2. But the Indictment neither alleged that Petitioner knew he was a felon nor cited § 924(a)(2). Because the Indictment did not allege that Petitioner knew of his status as a felon, it contained a Rehaif error.

Petitioner argues that the Indictment was invalid as it failed to give notice of the charged offense when it did not cite § 924(a)(2) and did not charge that he knowingly violate every element of § 924(g)(1). Civ. Doc. 3 at 1-3. He also argues that the Court was without jurisdiction to hold a trial because this faulty Indictment resulted in a jurisdictional defect – it "alleg[ed] only a non-offense" and a "stand-alone violation of [§] 922(g)(1)" is not a prosecutable offense." Id. at 4-5. Citing Rehaif, Petitioner also claims to be actually innocent of violating § 922(g)(1). See Civ. Doc. 10 at 6.

Respondent counters that Petitioner procedurally defaulted these claims because he failed to raise them on direct appeal. See Civ. Doc. 4 at 4-10. But the Court need not decide whether Petitioner procedurally defaulted his Rehaif claims or whether he can overcome the default. Even if the claims are not

defaulted, they fail on the merits under the harmless error standard applicable on collateral review. See Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); see also United States v. Arthurs, 823 F. App'x 692, 696-97 (10th Cir. 2020) (applying Brecht's harmless error standard to a Rehaif claim raised in a § 2255 motion).

> On collateral review, the harmless error standard mandates that "relief is proper only if the . . . court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict. There must be more than a reasonable possibility that the error was harmful." Davis v. Ayala, 576 U.S. 257, 267-68 (2015) (internal quotation marks and citations omitted); Ross v. United States, 289 F.3d 677, 682 (11th Cir. 2002) (per curiam) (applying this standard to a § 2255 motion). Put another way, the court may order relief only if the error "resulted in actual prejudice." [Brecht, 507 U.S. at 637] (internal quotation marks and citation omitted).

Granda v. United States, 990 F.3d 1272, 1292 (11th Cir. 2021). Notably, "[t]he burden of demonstrating in a collateral proceeding that an [error] violated the petitioner's due process rights is 'greater than the showing required to establish plain error on direct appeal.'" Galvan v. Cockrell, 293 F.3d 760, 765 (5th Cir. 2002) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Therefore, if a claim would fail under plain error review, it would necessarily fail under Brecht's harmless error standard.

A Rehaif error does not warrant a presumption of prejudice. Following Rehaif, the Supreme Court and the Eleventh Circuit have clarified that a Rehaif error – whether in the indictment, jury instructions, or a plea colloquy – is a

9

nonstructural error subject to plain error review on direct appeal (if unpreserved) or harmless error review (if preserved). <u>Greer v. United States</u>, 593 U.S. 503, 511-13 (2021); <u>United States v. Leonard</u>, 4 F.4th 1134, 1144 (11th Cir. 2021).[5] The Supreme Court also held that in determining whether a <u>Rehaif</u> error affected a defendant's substantial rights under plain error review, a court may examine the entire record, not just the trial record. <u>Greer</u>, 593 U.S. at 510; <u>see also</u> <u>United States v. Reed</u>, 941 F.3d 1018, 1021 (11th Cir. 2019) ("As the 'reviewing court[, we] may consult the whole record when considering the effect of any error on [the petitioner's] substantial rights.'" (quoting <u>United States v. Vonn</u>, 535 U.S. 55, 59 (2002))).

Petitioner argues that the Indictment failed to give notice of the charged offense because it did not allege that he knew he was a felon. The Eleventh Circuit has held, on similar facts, that such an error did not affect the defendant's substantial rights under plain error review. <u>See, e.g.</u>, <u>United States v. Innocent</u>, 977 F.3d 1077, 1082-84 (11th Cir. 2020); <u>Reed</u>, 941 F.3d at 1020-

---

[5] "Under the plain error standard, 'there must be (1) error, (2) that is plain, and (3) that affects [the defendant's] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>United States v. Moore</u>, 954 F.3d 1322, 1329 (11th Cir. 2020) (citation omitted).

Under the more defendant-friendly harmless error standard, which applies to errors that were preserved in the trial court, "the government bears the burden of showing that an error was 'harmless beyond a reasonable doubt.'" <u>Leonard</u>, 4 F.4th at 1144 (quoting <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967)).

22. Here, Petitioner cannot "prov[e] a reasonable probability that he would have obtained a different result but for" the Indictment's failure to allege that he knew he was a felon "because circumstantial evidence establishes that [he] knew of his felon status." Innocent, 977 F.3d at 1082 (internal citation omitted).

At his bench trial, Petitioner stipulated that before the January 2018 charged offense occurred, he was a convicted felon. See Crim Doc. 67 at 11-12. And "someone who has been convicted of felonies repeatedly is especially likely to know he is a felon." Innocent, 977 F.3d at 1082 (citation omitted). Petitioner had 3 felony convictions before this case: a 1996 conviction for possession of cocaine with intent to distribute; a 1997 conviction for possession of cocaine with intent to distribute; and a 2004 conviction for manufacture, sale, distribution, or possession with intent to distribute cocaine and heroin.[6] See Stancil, 4 F.4th at 1196. Also, "serving more than a year in prison provides circumstantial evidence of knowledge of felon status." Innocent, 977 F.3d at 1083 (citations omitted). And here, Petitioner served a five-year term of incarceration for his 1996 conviction. See Crim. Doc. 53 at 7-8.

Likewise, Petitioner "behaved in a way that suggested he knew he was not allowed to possess a gun." Innocent, 977 F.3d at 1083. The stipulated facts

---

[6] During sentencing, the government presented evidence of only these three prior convictions. See Crim. Doc. 68 at 4-5. But the Indictment lists additional convictions for possession of cocaine and possession of heroin. Crim. Doc. 1 at 1-2.

11

showed that when officers pulled over Petitioner and searched his vehicle, officers located the firearm under the driver's side floor mat. See Crim Doc. 67 at 15. Attempting to hide the firearm from police is circumstantial evidence that Petitioner knew he was a felon and knew he was not supposed to have a firearm. Indeed, Petitioner never alleges that he did not know he was a felon. See generally Civ. Docs. 1; 3. Petitioner cannot show plain error, let alone "actual prejudice," based on the Indictment's failure to allege that Petitioner knew he was a felon.

Petitioner also argues that the Indictment did not charge a federal offense, thereby depriving the Court of subject matter jurisdiction, because it neither cited § 924(a)(2) nor alleged that he knew he was a felon. The Eleventh Circuit has repeatedly rejected the same argument. Leonard, 4 F.4th at 1142-43; United States v. Morales, 987 F.3d 966, 978-79 (11th Cir. 2021); Innocent, 977 F.3d at 1084; United States v. Moore, 954 F.3d 1322, 1336-37 (11th Cir. 2020). Section 922(g) is a complete, self-contained offense, such that an indictment's failure to cite § 924(a)(2) does not mean it has failed to charge a federal crime. Leonard, 4 F.4th at 1142-43; Morales, 987 F.3d at 979. Further, omitting an element from an indictment, such as failing to charge that the defendant knew he was a convicted felon, is a non-jurisdictional defect. Leonard, 4 F.4th at 1142, 1143; Morales, 987 F.3d at 978-79; Moore, 954 F.3d at 1336-37. Here, while the Indictment did not allege that Petitioner knew he

12

was a felon, it was sufficient to invoke the Court's jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231; Leonard, 4 F.4th at 1142-43; Moore, 954 F.3d at 1332-33.

To the extent Petitioner argues he is "actually innocent" of the offense based on the Rehaif error, that argument is meritless too. The actual innocence exception "is exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted). "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). This exception is supposed to "remain 'rare' and . . . only be applied in the 'extraordinary case.'" Schlup, 513 U.S. at 321. As shown above, the stipulated evidence shows Petitioner knew he was a felon. The Rehaif error in the Indictment does not render Petitioner actually innocent. The Rehaif error here was harmless and thus Ground One is denied.

### b. Ground Two

Petitioner alleges that his trial counsel was ineffective for failing to challenge the Indictment because it did not meet the requirements of Rehaif and because it did not charge 18 U.S.C. § 924(a)(2) in conjunction with 18 U.S.C.

13

§ 922(g). Civ. Docs. 1 at 5, 3 at 8-9.

Rehaif was decided a month after the Court sentenced Petitioner. See Crim. Doc. 68. Indeed, when the government issued the Indictment and at the time Petitioner was sentenced, binding Eleventh Circuit precedent foreclosed the argument that the government must plead and prove a defendant's knowledge of his status as a felon. See United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997) (holding that a defendant does not have to know of his status as a felon to be convicted of knowingly possessing a firearm after a felony conviction). Trial counsel is not required to predict changes in the law. United States v. Finley, 805 F. App'x 823, 827 (11th Cir. 2020) ("This Court's precedent clearly forecloses an ineffective-assistance-of-counsel claim based on failure to raise an objection that would not succeed under current law, but which could succeed depending on a forthcoming Supreme Court decision."). Therefore, counsel cannot be deemed ineffective in the manner Petitioner suggests.

Also, to the extent Petitioner argues counsel failed to challenge the Indictment because it failed to mention § 924(a)(2), that claim also fails. Notably, the Eleventh Circuit has held that "§ 922(g) itself contains the requirement that the defendant knew he belonged to the relevant category of persons when he possessed the firearm." United States v. Leonard, 4 F.4th 1134, 1143 (11th Cir. 2021). And even after Rehaif, an Indictment that charges a defendant with violating § 922(g), is "enough to charge an offense against the

14

United States." Id. Here, the Indictment tracked the text of § 922(g). See Crim. Doc. 1 at 1-2 ("JEROME CURTIS STANCIL, having been previously convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . did knowingly possess, in and affecting interstate and foreign commerce, a firearm . . . and ammunition . . . [i]n violation of 18 U.S.C. §§ 922(g)(1) and 924(e)."). To that end, the Indictment sufficiently charged Petitioner with a crime against the United States, and thus counsel cannot be deemed deficient for failing to challenge it. See United States v. Morales, 987 F.3d 966, 979 (11th Cir. 2021) ("[A]n indictment that tracks [the] text [of § 922(g)] sufficiently states a crime against the United States."). Ground Two is denied.

### c. Ground Three

Petitioner argues that his trial counsel was ineffective for failing to challenge Petitioner's prior Viginia convictions used to support the Court's imposition of an ACCA sentencing enhancement. Civ. Doc. 1 at 6.

Under the ACCA, any person who violates 18 U.S.C. § 922(g) and who has three or more prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a 15-year mandatory minimum prison sentence. 18 U.S.C. § 924(e)(1). The term "serious drug offense" means:

15

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

Id. § 924(e)(2)(A).

"In determining whether a conviction qualifies as a serious drug offense, courts generally apply a categorical approach, looking 'only to the fact of conviction and the statutory definition of the prior offense, instead of the actual facts underlying the defendant's prior conviction.'" United States v. Simmons, 820 F. App'x 923, 925 (11th Cir. 2020) (quoting United States v. Robinson, 583 F.3d 1292, 1295 (11th Cir. 2009)). If the statute of conviction contains alternative elements, the sentencing court may consult Shepard-approved[7] sources, such as a charging document or the judgment, to discern the nature of the conviction. Simmons, 820 F. App'x at 925–26.

Here, to support the enhancement, the government relied on three prior convictions: (1) a 1996 Virginia conviction involving possession of cocaine with intent to distribute as an accommodation; (2) a 1997 Virginia conviction

---

[7] Shepard v. United States, 544 U.S. 13 (2005).

involving possession of cocaine with intent to distribute (second or subsequent offense); and (3) a 2004 Virginia conviction involving the manufacture, sale, distribution, or possession with intent – cocaine and heroin. See Crim. Doc. 68 at 4-5. Contrary to Petitioner's argument, in trial counsel's sentencing memorandum, see Crim. Doc. 54, and during Petitioner's sentencing hearing, see Crim. Doc. 68 at 5-13, trial counsel zealously argued that these convictions did not meet the qualifications for an ACCA enhancement. Nevertheless, the Court ultimately determined that each of those prior Virgina convictions were qualifying offenses under the ACCA.[8] Id. at 27-33. Petitioner, with help from appellate counsel, then challenged this determination, but the Eleventh Circuit agreed that Petitioner's three prior convictions qualified for an ACCA enhancement and affirmed Petitioner's judgment and sentence. Stancil, 4 F.th at 1198.

---

[8] In 2024, the United States Supreme Court issued Erlinger v. United States, 602 U.S. 821 (2024), holding that, in compliance with Apprendi v. New Jersey, 530 U.S. 466 (2000), the Fifth and Sixth Amendments require a jury, not a judge, to determine whether a defendant's predicate offenses under ACCA were committed on separate occasions. Erlinger, 602 U.S. at 834-35. Although Petitioner does not challenge his ACCA enhancement under Erlinger, the Court notes that even if he did, that claim would be without merit because the procedural rule announced in Erlinger is not retroactive on collateral review. See Erlinger, 602 U.S. 821, 859 n.3 (2024) (Kavanaugh, J., dissenting) ("For any case that is already final, the Teague [v. Lane, 489 U.S. 288 (1989),] rule will presumably bar the defendant from raising [Erlinger's] new rule in collateral proceedings."); see also Owens v. United States, No. 3:22-cv-549-MMH-PDB, 2025 WL 2687335, at *10 (M.D. Fla. Sept. 19, 2025) (applying the test set forth in Teague and finding that Erlinger is not retroactive on collateral review).

Considering this record, the Court cannot find that trial counsel was ineffective under Strickland. The fact that trial counsel's argument was unsuccessful does not mean she rendered deficient performance. See Chandler, 218 F.3d at 1314 (finding that while a particular defense was not successful it did not prove ineffective assistance). Thus, Ground Three is denied.

### d. Ground Four

Petitioner argues that his trial counsel failed to argue that he does not qualify for an ACCA enhancement because of Section 401[9] of the First Step Act. Civ. Doc. 1 at 7. He also asserts that trial counsel failed to argue that the decision in Wooden v. United States, 595 U.S. 360 (2022), renders his ACCA designation invalid and but for counsel's failure, he would have received a maximum ten-year term of incarceration. Civ. Doc. 3 at 15-17.

Initially, the First Step Act and Section 401 reduced the statutory minimum applicable to recidivist drug offenders and amended the Controlled Substances Act, including sentencing enhancements under 21 U.S.C. § 851. See United States v. Smith, 798 F. App'x 473, 475 (11th Cir. 2020). Here, Petitioner's sentence was enhanced under § 924(e). See Crim. Doc. 1; Crim. Doc. 68 at 28. Section 401 and the First Step Act do not apply to 18 U.S.C. § 924 and

---

[9] In his § 2255 Motion, Petitioner cites to Section 403 of the Act, Civ. Doc. 1 at 7, but his memorandum discusses Section 401, Civ. Doc. 3 at 15-17. Section 403 modified the "stacking" of multiple convictions under 18 U.S.C. § 924(c). Section 403 does not apply to Petitioner because he was not charged with violating § 924(c).

18

the ACCA. Smith, 798 F. App'x at 476 ("[T]he district court did not err in concluding that § 401(a)(1) of the F[irst] S[tep] A[ct] did not amend 18 U.S.C. § 924(e)(2)(A)(ii)'s definition of a 'serious drug offense' because the plain and unambiguous language of § 401(a)(1) amends only the [Controlled Substances Act]."). Thus, trial counsel cannot be deficient for failing to make this meritless argument.

Likewise, in Wooden, the Supreme Court interpreted the meaning of the "different occasions" clause of § 924(e). The Court concluded that ten burglaries, all of which occurred "on a single night, in a single uninterrupted course of conduct," all within the same one-building storage facility, were not committed on occasions different from one another. Wooden, 595 U.S. at 370. Rather, the Court concluded that "Wooden's ten burglary convictions were for offenses committed on a single occasion." Id. at 376. The Supreme Court thus held that the defendant did not have three or more prior convictions for a violent felony "committed on occasions different from one another" for purposes of § 924(e) and vacated his ACCA sentence. To that end, Wooden merely clarified the proper application of the ACCA's different-occasions clause. Wooden, 595 U.S. at 384 (Gorsuch, J., concurring) ("We took this case hoping to bring some clarity to at least this particular corner of the ACCA.")).

Here, as stated above, the government relied on three separate prior Virginia convictions to argue for the imposition of an ACCA enhancement. See

19

Crim. Doc. 68 at 4-5. During his sentencing hearing, the government explained that Petitioner obtained two qualifying convictions in 2004, but since it "[could not] prove that they occurred on dates different from one another," it conceded that the Court must only consider one of those 2004 convictions to support the enhancement. Crim. Doc. 68 at 4. The Court agreed, and using certified copies of the convictions, ultimately treated the two 2004 convictions as one valid prior conviction supporting an ACCA enhancement. Id. at 28-29. And after also considering the 1996 and 1997 convictions, it imposed an ACCA sentencing enhancement under § 924(e)(1). On direct appeal, the Eleventh Circuit considered each of the three prior convictions and found no error in this Court's sentence. See Stancil, 4 F.4th at 1198. As such, Petitioner cannot show that but for counsel's alleged error the outcome would have been different. Ground Four is denied.

### e. Gound Five

Petitioner contends that his trial counsel was ineffective for failing to subpoena Officer Ivey to testify during his motion to suppress hearing or request a continuance of the hearing until Officer Ivey was available. Civ. Doc. 3 at 17-18.[10] According to Petitioner, while Officers Lugo and Ardizzoni testified at the hearing, Ivey conducted the actual search of Petitioner's vehicle, thus his

---

[10] Petitioner does not include Ground Five in his Petition but rather sets out that Ground in his Memorandum. See generally Civ. Doc. 1; Civ. Doc. 3 at 17.

testimony was necessary to prove the legality of the search and the location of the alleged "odor" of marijuana that the officers used to justify the search. Id.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified [to] are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Even if counsel's failure to call a witness "appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) (quotations omitted). Thus, "[t]he mere fact that other witnesses might have been available . . . is not a sufficient ground to prove ineffectiveness of counsel." Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995). Additionally, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.

Here, Petitioner provides no affidavit or proffer of alleged testimony that Officer Ivey would have provided. To that end, Petitioner has offered no evidence that, even if Officer Ivey had testified, his testimony would have affected the outcome of the suppression hearing. Instead, Petitioner only

21

contends that Officer Ivey conducted the search, so his testimony "was crucial." Civ. Doc. 3 at 17. He also maintains that Ivey would have testified to the location of the officers and to the alleged "odor" of marijuana. Id. But "speculation that the missing witnesses would have been helpful" "is 'insufficient to carry the burden of a habeas corpus petitioner.'" Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001) (quoting Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985)). Because Petitioner's "self-serving speculation" that Officer Ivey's testimony would have been favorable "will not sustain an ineffective assistance claim," Ashimi, 932 F.2d at 650, Petitioner has not shown that counsel's failure to call him was deficient or prejudicial under Strickland.

Indeed, during Petitioner's suppression hearing, the government presented testimony from Officers Lugo and Ardizzoni who both testified to the location of each officer and the "odor" of marijuana. According to Lugo and Ardizzoni, when they approached Petitioner's vehicle during the traffic stop, they smelled marijuana coming from inside the vehicle. Crim. Doc. 29 at 20-21, 22. Both officers had experience with the odor of marijuana, and Officer Lugo testified that he advised Officer Ivey about the smell. Id. at 64-65. Officer Lugo explained that it was the strong odor of marijuana that gave them probable cause to search the vehicle and Ivey conducted the search of the vehicle because the other two officers needed his assistance. Id. at 64-65. Indeed, Officer Ivey

conducted the search while Officer Ardizzoni was tasked with monitoring Petitioner and Officer Lugo was running Petitioner's license. Id. at 29-30. Both officers stayed within close proximity of Ivey as he conducted the search, and throughout the search Ivey communicated with them and immediately advised Lugo and Ardizzoni when he discovered the firearm. Id. at 33-35, 94. Since it was the smell of marijuana that provided Officers Lugo and Ardizzoni with the probable cause to search, testimony from Officer Ivey about finding the firearm during that search would be irrelevant to the motion to suppress. As such, the Court finds that trial counsel was not deficient in failing to call Officer Ivey as a witness during the suppression hearing and Ground Five is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2.      The Clerk shall enter judgment accordingly, terminate any pending motions, and close this file.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability (COA). Because this Court has determined that a COA is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such

23

termination shall serve as a denial of the motion.[11]

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of March 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

Jax-7
C:    Jerome Curtis Stancil, #70340-018
      Counsel of record

---

[11] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

24